IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| LEONARD P. AGUILAR,<br><br>    Petitioner,<br><br>    v.<br><br>RONALD BRAWNER,<br><br>    Respondent. | CIVIL ACTION NO.: 2:22-cv-19 |

### ORDER AND REPORT AND RECOMMENDATION

Petitioner Leonard Aguilar ("Aguilar") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2016 Camden County, Georgia convictions and sentence. Doc. 1.  Respondent filed an Answer-Response and supporting exhibits.  Docs. 6, 8.  Aguilar filed a Reply.[1]  Doc. 11.  For the reasons set forth below, I **RECOMMEND** the Court **DENY** Aguilar's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Aguilar leave to proceed *in forma pauperis* and a Certificate of Appealability.  I **GRANT** Aguilar's Motion for Inquiry and Motion for Ruling, to the extent this Report and Recommendation is being issued. Docs. 14, 15.

### BACKGROUND

Aguilar was indicted in January 2016 on charges of aggravated child molestation and four counts of child molestation against two minors.  Doc. 6-1 at 1; Doc. 8-13 at 3.  After a jury trial, Aguilar was convicted on all counts and was sentenced to a split life sentence on the

---

[1]    Aguilar's Reply is not responsive to Respondent's Answer-Response, but the Court notes his submission.  Doc. 11.

aggravated molestation count, 25 years to serve and the balance to be served on probation, and to concurrent split 6-year sentences, 5 years to serve and the balance on probation, on the child molestation counts.  Doc. 6-1 at 1.  Aguilar filed a motion for new trial, which the Camden County court denied after a hearing.  Doc. 8-11 at 77–145; Doc. 8-12 at 2.  Richard Allen represented Aguilar during the trial proceedings, and Andrew Fleischmann represented Aguilar during the motion for new trial proceedings and on appeal.  Doc. 6-1 at 2.

On direct appeal, Aguilar contended Mr. Allen rendered ineffective assistance because he failed to: (1) explain the parole consequences of rejecting the State's plea offer; (2) request a good character instruction after eliciting good character evidence; (3) object to the State's burden shifting argument the jury would have to believe the victims were "liars" and "sociopaths" to acquit Aguilar; and (4) call or consult an independent forensic interview expert.  Doc. 8-1 at 3; Doc. 8-13 at 4.  The Georgia Court of Appeals applied Strickland v. Washington, 466 U.S. 668 (1984), and its progeny to Aguilar's ineffective assistance claims and found Aguilar did not meet his burden.  Doc. 8-1 at 7–18.  The Georgia Supreme Court denied Aguilar's petition for writ of certiorari.  Doc. 1 at 2.

Aguilar then filed a state habeas corpus petition and raised the same four grounds of ineffective assistance of trial counsel claims as he did on direct appeal.  Doc. 8-2 at 5–6; Doc. 8-3 at 2.  The state habeas court noted Aguilar raised the same four grounds on direct appeal and the appellate court decided each ground adversely to him.  That court also noted Aguilar could not re-litigate habeas corpus claims decided on the merits on appeal unless there were a change in the law or facts.  Observing there had been no change, the state habeas court found Aguilar's grounds provided no basis for relief.  Doc. 8-4 at 3–4.  The Georgia Supreme Court denied

Aguilar's application for certificate of probable cause. Doc. 1 at 4. Aguilar has now filed his § 2254 Petition, which is fully briefed and ripe for review.

## DISCUSSION

In his Petition, Aguilar maintains Mr. Allen, his trial counsel, provided ineffective assistance during the underlying criminal proceedings. Doc. 1. Specifically, Aguilar asserts Mr. Allen provided ineffective assistance because he failed to: (1) explain the parole consequences for rejecting the State's plea offer; (2) request a good character instruction after eliciting good character evidence; (3) object to the State's burden shifting argument the jury would have to believe the victims were "liars" and "sociopaths" to acquit Aguilar; and (4) call or consult an independent forensic interview expert. Id. at 5, 7, 8, 10.

Respondent states Aguilar raised these same four grounds on direct appeal. Doc. 6-1. Respondent also states the Georgia appellate court applied Strickland to these grounds and found Aguilar's claims to be without merit. Further, Respondent argues Aguilar fails to show the state appellate court's decision is contrary to or an unreasonable application of federal law or is based on an unreasonable determination of the facts. Id. at 8–12. Thus, Respondent asserts Aguilar is not entitled to relief.

**I.     The State Court's Determination Is Entitled to Deference**

    **A.     Standard of Review**

Section 2254(d) of Title 28 of the United States Code sets forth the deference to be afforded to a State court's legal determinations:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). In reviewing a petitioner's habeas claim under § 2254(d)(1), a court should first determine the law that was "clearly established" by the United States Supreme Court at the time the State court adjudicated the petitioner's claim. Williams v. Taylor, 529 U.S. 362, 391 (2000). After determining the clearly established law, the reviewing court should next determine whether the State court's adjudication was "contrary to" clearly established Supreme Court caselaw or involved an unreasonable application of that clearly established Supreme Court law. Id. A state court's adjudication is contrary to clearly established Supreme Court caselaw if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413 (O'Connor, J., concurring). A state court's decision involves an unreasonable application of clearly established Supreme Court law if the "court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. Id. at 409 (O'Connor, J., concurring). To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1331 (11th Cir. 2019) (quoting Virginia v. LeBlanc, 582 U.S. 91, 94 (2017); in turn quoting Woods v. Donald, 575 U.S. 312, 316 (2015)); see also Bell v. Cone, 535 U.S. 685, 694 (2002)

4

(explaining "an unreasonable application is different from an incorrect one").  In applying the deference standard, a reviewing court is to look to the decision of the last court which issued a merits-based, reasoned determination.  Wilson v. Sellers, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018); see also Pye v. Warden, Ga. Diagnostic Prison, 50 F.4th 1025, 1034 (11th Cir. 2022) (quoting Wilson and stating "the federal court must 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale' and 'presume that the unexplained decision adopted the same reasoning.'").

    **B.**    **Clearly Established Law**

The clearly established law regarding ineffective assistance of counsel is found in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "To show an attorney's choice of strategy is unreasonable, a petitioner must show no competent counsel would have made such a choice." Brooks v. Perry, No. CV418-248, 2019 WL 2913799, at *4 (S.D. Ga. May 7, 2019), report and recommendation adopted, 2019 WL 2913313 (S.D. Ga. July 3, 2019) (citing Strickland, 466 U.S. at 690). Prejudice "occurs if 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Rivers v. United States, Case Nos. CV415-194, CR414-99, 2016 WL 2646647 at *1 n.2 (S.D. Ga. May 9, 2016) (quoting Strickland, 466 U.S. at 687).

In the context of ineffective assistance claims previously rejected by a state court, the petitioner bears the even heavier burden of 'show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner.'" McDuffie v. Smith, No. CV 319-051, 2020 WL 2744113, at *8 (S.D. Ga. Apr. 3, 2020), report and recommendation adopted, 2020 WL 2739822 (S.D. Ga. May 26, 2020) (quoting Bell v. Cone, 535 U.S. 685, 699 (2002); and then citing Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable")). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland

6

incorrectly." Bell, 535 U.S. at 99. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (italics in original).

"Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. In addition, federal habeas courts are also guided "by the mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence." McDuffie, 2020 WL 2744113, at *9 (citing 28 U.S.C. § 2254(e)(1)). "Moreover, [the] AEDPA requires the Court give deference to the state-court decision, and that deference must be 'near its apex' when considering Strickland claims that turn on general, fact-driven standards." Boos v. White, No. CV 120-082, 2021 WL 4075828, at *5 (S.D. Ga. July 20, 2021), report and recommendation adopted, 2021 WL 4073281 (S.D. Ga. Sept. 7, 2021), certificate of appealability denied sub nom. Boos v. Warden, No. 21-13281-C, 2022 WL 892506 (11th Cir. Jan. 31, 2022), cert. denied sub nom. Boos v. White, 143 S. Ct. 242 (2022) (quoting Sexton v. Beaudreaux, 585 U.S. ___, 138 S. Ct. 2555, 2560 (2018)). The Georgia Court of Appeals denied Aguilar's claims of ineffective assistance of counsel, and, therefore, this Court must turn to the appellate court's determination. Wilson, 138 S. Ct. at 1192.

C.  **Application to State Appellate Court's Determination**

1.  ***Aguilar does not meet his burden to show the state appellate court applied <u>Strickland</u> improperly to his claim Mr. Allen was ineffective for failing to explain the parole consequences of rejecting the plea offer (Ground 1).***

Aguilar states he was offered "a significantly reduced sentence" prior to the trial in this case: 10 years to serve with another 10 years on probation and a reduction from aggravated child molestation to child molestation. Doc. 1 at 20. Aguilar states he rejected this plea, but Mr. Allen failed to tell Aguilar he would never be eligible for parole if he were convicted of aggravated child molestation. Rather than providing this advice, Aguilar states Mr. Allen only told Aguilar he thought the State had a terrible case. <u>Id.</u> at 21. Aguilar contends the "rosy picture" Mr. Allen painted prevented him from making an informed decision about the plea offer. <u>Id.</u> at 22.

Respondent asserts the Georgia Court of Appeals determined Aguilar did not show a reasonable likelihood the outcome of his trial court proceedings would have been different but for Mr. Allen's alleged deficiency. Doc. 6-1 at 7. Respondent notes this determination should be given deference, as the state appellate court reasonably applied the law and reasonably determined the facts before it. <u>Id.</u>

The Georgia Court of Appeals recounted Aguilar's testimony at the motion for new trial hearing, particularly his testimony Mr. Allen did not tell Aguilar if he were convicted of aggravated child molestation, he would not be eligible for parole due to the mandatory minimum and, had he known this, he would have accepted the plea. Doc. 8-1 at 5. Aguilar testified Mr. Allen told him he had a strong case and the State's case was weak but did not tell Aguilar about the parole consequences until after the jury convicted him. <u>Id.</u> The appellate court noted Aguilar testified on cross-examination at this hearing, at the time he rejected the plea offer before trial, the prosecutor told him the aggravated child molestation charge carried with it a minimum

8

sentence of 25 years in prison, the offered plea presented a significant deviation from the minimum, and he could face life plus 80 years in prison if he were convicted. Id. at 6 (citing Doc. 8-11 at 92–93). In addition, Aguilar's wife testified at the motion for new trial hearing Aguilar would have considered a "good plea deal" if he had been offered it, but she could not say whether he would have taken it. Id. Aguilar's wife's testimony revealed she and Aguilar discussed the plea, but her opinion was, if someone were innocent, he should not take the plea, because a plea offer is "legal bullying." Id. (quoting Doc. 8-11 at 97). Mr. Allen testified during this hearing he could not remember whether he informed Aguilar he would not be eligible for parole on the aggravated child molestation charge, but Mr. Allen did tell Aguilar he could get a life sentence upon conviction on the charge, all of which could have been without parole. Id. (citing Doc. 8-11 at 125).

The Georgia Court of Appeals noted an aggravated child molestation crime carries a mandatory minimum sentence of 25 years' imprisonment and up to life in prison. Aguilar was convicted on all counts and was sentenced to a split life sentence on the aggravated molestation count, 25 years to serve and the balance to be served on probation, and to concurrent split 6-year sentences, 5 years to serve and the balance on probation, on the child molestation counts. Id. at 5; Doc. 6-1 at 1. That court observed there can be some circumstances where an attorney's failure to offer advice concerning collateral consequences of a plea agreement may give rise to a Strickland ineffective assistance claim, particularly where the attorney did not inform the client of his ineligibility for parole. Doc. 8-1 at 5. However, after recounting the testimony at the motion for new trial hearing, the Georgia Court of Appeals made no determination on whether Mr. Allen fully informed Aguilar about the mandatory minimum sentence on the aggravated child molestation charge. Instead, the Georgia court determined Aguilar did not show he was

9

prejudiced by any such omission.  Id. at 7.  That court found Aguilar failed to carry his burden on the prejudice prong of the Strickland standard because he presented no objective evidence to support any assertion he would have accepted the offered plea but for Mr. Allen's allegedly deficient performance.[2]  Id. at 9.  Additionally, the appellate court determined Aguilar made no attempt to show the trial court "would not have refused to accept the plea[]" as a result of Mr. Allen's alleged deficient performance.  Id. at 10.

As noted, the Georgia Court of Appeals looked to testimony from the motion for new trial hearing and the trial itself and applied Strickland and Lafler v. Cooper, 566 U.S. 156 (2012), to find Aguilar failed to establish any prejudice by an omission Mr. Allen made regarding the parole consequences of rejecting the offered plea.  Id. at 7.  What is more, Aguilar makes no allegation—let alone any showing—he would have accepted the offered plea but for Mr. Allen's omission.  Lafler, 566 U.S. at 163 (applying Strickland to an ineffective assistance claim involving a rejected plea offer and the three criteria a petitioner must meet to satisfy the prejudice prong of Strickland).  Aguilar fails to show the state appellate court's determination presents an unreasonable application of Strickland or Lafler and is not entitled to deference.  In addition, Aguilar presents no evidence the state appellate court's factual determination on this ground is unreasonable in light of the evidence presented to it, and Aguilar has certainly not

---

[2]  The Georgia Court of Appeals cited a Georgia Supreme Court case, Gramiak v. Beasley, 820 S.E.2d 50 (Ga. 2018), in which the Georgia Supreme Court cited Lafler v. Cooper, 566 U.S. 156 (2012), for the three criteria a petitioner must meet to satisfy the Strickland prejudice prong: (1) but for ineffective advice, there is a reasonable probability the plea would have been accepted and presented to the court; (2) the court would have accepted the plea; and (3) the conviction or sentence, or both, under the plea would have been less severe than the judgment and sentence imposed.  820 S.E.2d at 54 (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012); and then citing Missouri v. Frye, 566 U.S. 134 (2012)); see also Doc. 8-1 at 7–10 (observing Aguilar may have met the third criterion but not the first two criteria of this standard).

presented clear and convincing evidence the factual determination was incorrect. Thus, Aguilar is not entitled to relief on this ground.

> **2.     Aguilar does not meet his burden to show the state appellate court applied <u>Strickland</u> improperly to his claim Mr. Allen was ineffective for failing to request good character jury instruction (Ground 2).**

Aguilar argues Mr. Allen was ineffective because he did not request a good character jury instruction. At the hearing on the motion for new trial, Mr. Allen testified he did not request the good character instruction as part of his strategy to avoid giving the prosecution an opportunity to introduce evidence of Aguilar's bad character, namely evidence of Aguilar's extramarital affair. Doc. 8-11 at 126–27. At another point in that hearing, when Mr. Allen was asked about his knowledge of the legal authority for requesting a good character instruction, Mr. Allen testified he made a decision to not request the instruction because he wanted to "stick with what [the defense] had" and testified he "just didn't even consider" requesting the instruction. <u>Id.</u> at 140.

Aguilar argues Mr. Allen's testimony shows he (Mr. Allen) did not know he could request a good character jury instruction. Doc. 1 at 24. Aguilar argues Mr. Allen did not make a strategic decision about whether to request the instruction, but, instead, Mr. Allen was ignorant about the legal authority for requesting the charge. Aguilar contends Mr. Allen's ignorance is the "quintessential example of unreasonable performance." <u>Id.</u> at 25. Aguilar acknowledges Mr. Allen also testified he made a strategic decision to not request the good character instruction, but Aguilar dismisses this testimony as a post hoc rationalization for not requesting the instruction at trial. <u>Id.</u> at 23.

Respondent asserts the state appellate court found Mr. Allen's decision not to request a good character instruction was a reasonable strategic decision and this determination is entitled

11

to deference.  Doc. 6-1 at 8.  Respondent argues Aguilar does not show the state appellate court applied controlling law in an unreasonable manner or made an unreasonable determination of the facts.  Id. at 9.

The state appellate court determined Mr. Allen's decision to not request a good character charge was a strategic decision.  Doc. 8-1 at 11.  That court noted decisions about trial tactics and strategy are rarely an adequate ground "for finding trial counsel ineffective unless" the decision was "so patently unreasonable . . . no competent attorney would have" made that decision.  Id.  In so doing, the appellate court looked to Mr. Allen's testimony during the motion for new trial hearing.  Mr. Allen testified he made an intentional choice not to describe the trial witnesses as character witnesses or to request a good character charge because he did not want to give the State the chance to go into bad character evidence.  Id. at 10.  Specifically, Mr. Allen did not want the State to present evidence Aguilar had admitted to having an affair and was living with another woman after his wife had a stroke.  Id. at 10–11 (citing Doc. 8-11 at 126).  While Mr. Allen took Aguilar's suggestion to cite the affair as a reason for the victims to lie about their allegations against Aguilar, Mr. Allen "chose to walk a fine line on how that evidence was portrayed."  Id. at 11.  The state court considered Mr. Allen's testimony and found Aguilar did not meet his burden of showing Mr. Allen was deficient.  In addition, the state appellate court noted Aguilar and his appellate counsel, Mr. Fleischmann, disagreed with Mr. Allen's decision about the good character charge, but "such disagreement" did not warrant a finding of inadequate representation.  Id. at 12.

The Georgia appellate court recounted Mr. Allen's testimony during the motion for new trial hearing and applied Strickland and its progeny to the facts before it.  Id. at 11 (citing e.g., Walker v. State 804 S.E.2d 804, 811 (Ga. 2017) (applying Strickland to ineffective assistance of

trial counsel claims relating to strategic decisions on requests for jury charges)). That court determined Mr. Allen's decision not to ask for a character jury instruction was a strategic decision and Aguilar failed to show Mr. Allen's performance was deficient. Aguilar fails to show the state appellate court applied <u>Strickland</u> in an unreasonable manner. Moreover, Aguilar fails to present any evidence the state appellate court's factual determination on this ground is unreasonable in light of the evidence presented on appeal. In fact, Aguilar fails to even make a generalized argument of unreasonableness. Aguilar is not entitled to relief on this ground.

> 3. ***Aguilar does not meet his burden of showing the state appellate court applied <u>Strickland</u> in an unreasonable manner to his claim Mr. Allen was ineffective for failing to object to the State's burden shifting argument (Ground 3).***

Aguilar maintains the State improperly shifted the burden to the defense by announcing during closing arguments the jury would have to believe the victims were sociopaths or liars or had a reason to lie. Doc. 1 at 26. Respondent notes the state appellate court's determination on this ground is entitled to deference and Aguilar does not show this determination is contrary to or an unreasonable application of case law or is based on an unreasonable determination of the facts. Doc. 6-1 at 10.

The appellate court noted Mr. Allen's testimony at the new trial motion hearing, during which he noted the sociopath or liar language was objectionable but he could not explain why he failed to object. In addition, Mr. Allen explained his strategy was to paint the victims as liars and the events could not have happened as the victims described with so many people around Aguilar and the victims. Doc. 8-1 at 12 (referencing Doc. 8-11 at 127–28, 129). The Georgia Court of Appeals noted Mr. Allen argued during his closing argument at trial:

> Why would these kids lie? Why would they—and this is the million dollar question—why would they put themselves through this? It's not up to you to explain that . . . . They could be nuts. They could be evil. I don't have a clue

>   why.  But that's not up to us.  That's up to them to convince you.  And they have
>   shown you nothing.

Id. at 12–13 (quoting Doc. 8-11 at 16–17).  In addition, the Georgia court noted Mr. Allen also stated during his closing each of the victims was a liar.  Id. at 13 (citing Doc. 8-11 at 18).  The State was permitted to counter Mr. Allen's suggestion during its closing, the state court found, and nothing in the prosecutor's argument impermissibly shifted the burden to the defense.  Instead, the prosecutor's argument went to the victims' credibility, which was for the jury to decide.  Id. at 14–15 (citing Doc. 8-11 at 22, 23, 33, 35).  The appellate court found Aguilar's assertion failed because he failed to show prejudice, as the "trial court fully and correctly instructed the jury on the burden of proof.  Thus, even if defense counsel would have objected to the prosecutor's statements, the outcome of the trial would not have been different."  Id. at 15 (quoting Chavez v. State, 764 S.E.2d 447, 451 (Ga. Ct. App. 2014)).

Aguilar did not show the requisite prejudice during his appeal as a result of Mr. Allen's alleged ineffective assistance.  Aguilar presents no evidence the state court's factual determination on this ground is unreasonable in light of the evidence presented to it.  Aguilar also does not show the state appellate court applied Strickland in an unreasonable manner based on the facts before it.  Thus, Aguilar is not entitled to relief on this ground.

> **4. Aguilar does not meet his burden of showing the state appellate court applied Strickland in an unreasonable manner to his claim Mr. Allen was ineffective by failing to call or consult an independent forensic interview expert (Ground 4).**

Finally, Aguilar contends Mr. Allen provided ineffective assistance of counsel when he failed to hire an expert for consultation or to testify at trial.  In addition, Aguilar contends Mr.

Allen asked to borrow money from Aguilar's defense fund for Mr. Allen's legal education, which presents a conflict of interest.[3] Doc. 1 at 29–30.

Respondent notes the Georgia Court of Appeals determined Aguilar could not show Mr. Allen's performance was deficient, as decisions to call witnesses are matters of trial strategy and tactics. Doc. 6-1 at 12. Respondent maintains Aguilar fails to show this determination is an unreasonable application of Strickland or based on an unreasonable determination of the facts. Id.

The Georgia Court of Appeals noted Aguilar presented expert testimony on forensic interviewing and child psychology during the hearing on his motion for new trial, and the expert stated the protocol followed during child interviews is to "distill a child's real memories from any potential for taint[]" and offered a number of criticisms of the forensic interviews in Aguilar's prosecution. Doc. 8-1 at 16. In addition, the Georgia appellate court noted Mr. Allen testified during this hearing he did not call an expert at trial because "it would have only served to expand the issue of who was lying, Aguilar" or the victims. Id. Mr. Allen stated his belief he had presented overwhelming evidence of Aguilar being a good guy, there was no way the victims' versions of events could have happened with so many people in the house, and there was no opportunity for Aguilar to be alone with the victims. Mr. Allen also stated, had he called an expert to testify, the State could have called a rebuttal expert, who could have provided

---

[3] At the hearing on the motion for a new trial, Mr. Allen testified he asked Aguilar for permission to use some of the litigation fund (or possibly a retainer) to attend a seminar on defending individuals charged with child molestation. Doc. 8-11 at 130–31. Mr. Allen told Aguilar he initially did not plan to attend the seminar because he (Mr. Allen) attended the same seminar a year before, but it might be beneficial to Aguilar's case if he attended the seminar again. Id. Mr. Allen told Aguilar he would repay the cost of attendance at a later time. Ultimately, Mr. Allen did not use the funds for that purpose and did not attend the seminar in question. Doc. 8-11 at 84. There is no basis whatsoever for a claim that the mere discussion of Mr. Allen using funds to attend a seminar would constitute ineffective assistance of counsel. Therefore, I do not address this contention further.

testimony that would have been detrimental to Aguilar.  Id. at 16–17 (referencing Doc. 8-11 at 136–39).  The state court concluded Aguilar did not establish Mr. Allen rendered ineffective assistance, as the strategic decision "'not to call an . . . expert was not patently unreasonable[.]'"  Id. at 18 (quoting Stripling v. State, 816 S.E.2d 663, 670 (Ga. 2018) (applying Strickland to determine counsel's decision not to call an expert was a matter of trial strategy and tactics)).

Aguilar fails to show entitlement to relief on this ground.  Aguilar does not show the state appellate court applied Strickland in an unreasonable manner.  In addition, in looking at the testimony at the motion for new trial hearing, Aguilar has not shown the appellate court's determination resulted from an unreasonable application of clearly established law, nor has Aguilar presented any evidence the state court's factual determination on this ground is unreasonable in light of the evidence presented to it.  Accordingly, Aguilar is not entitled to relief on this ground.

## II.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Aguilar leave to appeal *in forma pauperis* and deny him a Certificate of Appealability.  Though Aguilar has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis supplied); see also Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691

(M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued. A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

17

Based on the above analysis of the filings in this case and applicable case law and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Aguilar *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Aguilar's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, doc. 1, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Aguilar leave to proceed *in forma pauperis* and a Certificate of Appealability. I **GRANT** Aguilar's Motion for Status and Motion for Ruling, to the extent I issue this Report and Recommendation.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 18th day of January, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA